**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER OHLMANN | } | |
| | } | |
| Plaintiff, | } | **CASE NO. 3:22-CV-00005-CHB-RSE** |
| | } | |
| v. | } | |
| | } | |
| REYNOLDS CONSUMER PRODUCTS, LLC | } | **AMENDED COMPLAINT** |
| | } | |
| Defendant. | } | |

The Plaintiff, Christopher Ohlmann, by counsel, for his Amended Complaint against Defendant, Reynolds Consumer Products, LLC, states as follows:

**JURISDICTION AND VENUE**

1.  This civil action arises under the Federal Family Medical Leave Act, 29 U.S.C. § 2611 *et seq*. (the FMLA), and under the Kentucky Civil Rights Act, KRS § 344.010, *et seq.* (the KCRA).

2.  Plaintiff Christopher Ohlmann ("***Plaintiff***" or "***Mr. Ohlmann***") is a resident of Louisville, Jefferson County, Kentucky.

3.  Reynolds Consumer Products, LLC (hereafter "RCP") is a Delaware corporation with its principal place of business located at 1900 W. Field Court, in Lake Forest, Illinois..

4.  Plaintiff was employed by RCP at its manufacturing plant located in Louisville, Jefferson County County, Kentucky.

5.  Decisions regarding Plaintiff's employment occurred in Jefferson County, Kentucky.

6.  At all pertinent times herein, Plaintiff was a covered "employee" and Defendant was a covered "employer" under 29 U.S.C. § 621 *et. seq*. and under KRS § 344.030.

7. At all pertinent times herein, Plaintiff was an "eligible employee" pursuant to 29 U.S.C. § 2611(2)(A), in that at the time he requested leave he had worked for Defendant for more than 1250 hours in the twelve months preceding his request for leave and had worked for Defendant for more than 12 months.

8. The Court has jurisdiction over Plaintiff's claims against Defendant pursuant to 28 U.S.C. § 1331, federal question jurisdiction, and 29 U.S.C. §2617(a)(2), the Family Medical Leave Act. The Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

9. Venue in this Court is proper because it is the judicial district in which a substantial part of the complained of acts giving rise to the claims occurred.

## FACTS

10. Plaintiff was hired by Defendant in 2017.

11. In or around late 2018 Plaintiff cut his leg while at work. Immediately after the injury, Plaintiff continued his work; however, the following day while at work his right leg began to swell, became sore, and red streaks started to develop.

12. Upon noticing the swelling and tenderness, Plaintiff promptly reported the matter to Anthony Speller, the B-Shift Plant Manager. Mr. Speller advised that Plaintiff needed to go to the hospital as it could be a life threatening infection, if untreated could eventually run to his heart.

13. Immediately after the meeting with Mr. Speller, Plaintiff was transported to the emergency room where he was diagnosed with a methicillin-resistant staphylococcus aereus ("MRSA") infection and cellulitis of the right lower extremity.

14. Plaintiff was hospitalized for three (3) days, and after his release from the hospital, he continued treatment, taking antibiotics.

15. Throughout his absence from work he kept RCP informed about his condition.

16. Plaintiff was released to return to work without restrictions and did return after a one week absence.

17. Upon information and belief, on or about July 7, 2020, Plaintiff's leg became severely swollen while he was on a work break sitting in his car. He could not walk or get out of the car on his own, and he called over David Devor, a co-worker who was walking by. Mr. Devor assisted Plaintiff in getting out of the car and escorted him into the Reynolds Wrap Side Building main office. Eventually someone came to pick him up and he was assisted out of the building and taken to the hospital

18. Plaintiff was hospitalized for several days and he was placed on an FMLA approved medical leave for approximately three weeks based on a flare-up of his cellulitis of the right lower extremity.

19. On September 14, 2020, Plaintiff worked his regular shift, finishing work at 11 p.m. Shortly before his shift ended he was advised that he would need to return to work for an early shift starting at 11 a.m. the next morning September 15, 2020, i.e. four (4) hours before his regularly scheduled shift start time of 3:00 p.m..

20. On the night of September 14, 2020, Plaintiff left work and drove directly to the home of Porsche Rose, arriving at approximately midnight. At that time his leg was swollen and he was in significant pain. He fell asleep on the floor at the top of the stairs, unable to get into bed, and too exhausted to get undressed.

21. The next morning, September 15, 2020, Ms. Rose had difficulty waking the Plaintiff. Plaintiff finally woke up at approximately 9:30 with a swollen foot and leg, and unable to walk. He realized that he was suffering from a significant recurrence of his cellulitis infection.

He again was unable to put on his work boots or shoes. However, he realized that his telephone was not charged, and he was unable to call in to work before 10:00 a.m. as he did not have a functioning telephone.

22.  Once he located an appropriate telephone charger and sufficiently recharged his telephone, he immediately called into work to notify RCP that due to a flare-up of his cellulitis he was once again going to the hospital and unable to report to work and would need to use FMLA leave.

23.  On September 15, 2020, he was taken to the hospital emergency room, where he was admitted for treatment and observation.

24.  Plaintiff was not released from the hospital until September 17, 2020, and ordered that he not to return to work until released by his physician.

25.  Upon information and belief, on September 23, 2020, Plaintiff's doctor faxed the completed FMLA paperwork to RCP requesting FMLA leave through October 15, 2020 based on Plaintiff's flare up of his cellulitis.

26.  Unbeknown to the Plaintiff, on October 2, 2020, Plaintiff was issued a step 5 correction action, suspension pending investigation for purpose of termination, based on Plaintiff's late call-in on September 15, 2020.

27.  On October 15, 2020, Plaintiff's leg was again swollen and red and he immediately called Mr. Speller to inform him that he needed to extend his FMLA leave to seek treatment for his leg.

28.  Plaintiff's doctor released Plaintiff to return to work on October 19, 2020.

29.  Upon information and belief, on October 19, 2020, Plaintiff reported for work with no work restrictions; however, upon arrival he was advised by Mr. Speller that Plaintiff was

suspending pending an investigation for the purpose of terminating his employment based on his attendance violations.

30. Plaintiff was advised that the basis for the attendance violation was his late call-in on September 15, 2020, when Plaintiff was suffering from a substantial flare-up of his cellulitis.

31. Upon information and belief, on October 26, 2020, Defendant upheld the termination decision even though Plaintiff had an unforeseen need for FMLA leave on September 15, 2020 and timely and properly gave notice to Defendant of his need for FMLA leave on that date.

## COUNT I
## FMLA INTERFERENCE IN VIOLATION OF 29 U.S.C. § 2615(A)(1)

32. Plaintiff hereby incorporates numerical paragraphs 1 through 31 as if fully restated herein.

33. Defendant interfered with Plaintiff's rights under Family Medical Leave Act, 29 U.S.C. § 2615 *et seq*. (FMLA) by charging him with unwarranted attendance points after he requested FMLA leave and then by terminating his employment on or about October 26, 2020.

34. In response to Plaintiff's lawful requests and claims under the FMLA, Defendant subjected Plaintiff to unwarranted treatment and discipline interfering with Plaintiff's exercise of his rights under the FMLA.

35. Defendant's actions and or omissions in interfering with Plaintiff's FMLA rights were not taken in good faith.

36. As a direct and proximate result of Defendant's violation of the FMLA, Plaintiff has been deprived and continues to be deprived of past and future wages, and other terms, conditions, and privileges of employment.

37. Because of Defendant's violation of the FMLA, Plaintiff is permitted a civil action

in this Court against Defendant, and is entitled to injunctive relief, recovery of actual damages suffered, including the loss of earnings and benefits he has sustained due to the termination of his employment, pre-judgment interest, liquidated damages, his costs in bringing and pursuing this action, including an award of reasonable attorney's fees, and equitable relief in the form of reinstatement and/or an award of front pay.

## COUNT II
## RETALIATION IN VIOLATION OF 29 U.S.C. § 2615(A)(2)

38. Plaintiff hereby incorporates numerical paragraphs 1 through 37 as if fully restated herein.

39. Rather than making a good faith attempt to accommodate Plaintiff in his leave requests, Defendant subjected Plaintiff to discriminatory, retaliatory, interfering, and disparate treatment, culminating in the termination of his employment on or about October 26, 2020, in violation of the Family Medical Leave Act *("FMLA")*, 29 U.S.C. §2615(a)(2).

40. Defendant's actions and or omissions in discriminating and retaliating against Plaintiff were not taken in good faith.

41. As a direct and proximate result of Defendant's intentional and willful violation of the FMLA, Plaintiff has been deprived and continues to be deprived of past and future wages, and other terms, conditions, and privileges of employment at Defendant.

42. Because of Defendant's violation of the FMLA, Plaintiff is permitted a civil action in this Court against Defendant and is entitled to injunctive relief, recovery of actual damages suffered, including the loss of earnings and benefits he has sustained due to the termination of his employment, interest, liquidated damages, his costs in bringing and pursuing this action, including an award of reasonable attorney's fees, and equitable relief in the form of reinstatement and/or an award of front pay.

## COUNT III
## **DISCRIMINATION IN VIOLATION OF THE KCRA**

43. Plaintiff hereby incorporates numerical paragraphs 1 through 31 as if fully restated herein.

44. Plaintiff suffers from a medical impairment, recurrent or chronic cellulitis of his right lower extremity, that when active, interferes with the Plaintiff's ability to care for himself, including a substantial limitation on his daily activities of getting dressed and shod. Further when his cellulitis is active he cannot work, and he cannot walk or stand as he must keep his leg elevated.

45. RCP knew of Plaintiff's impairment, that it was chronic and or recurrent, and that when active it substantially limited Plaintiff's daily activities.

46. Plaintiff, requested a workplace accommodation of time off from work during times that his cellultis was active.

47. With such an accommodation Plaintiff could have performed the essential functions of the position he held at RCP.

48. Plaintiff's accommodation request did not exceed the time available for medical leave to care for one's own health condition available to Plaintiff under the FMLA, and therefore his request was *per se* reasonable.

49. Rather than accommodating the Plaintiff or engaging in the interactive process anticipated under the KCRA, Defendant chose to terminate Plaintiff's employment.

50. Upon information and belief, RCP replaced the Plaintiff with someone who is not disabled.

51. RCP's discriminatory conduct towards Plaintiff, including but not limited to the failure to accommodate and the decision to discharge the Plaintiff, and in retaliation for requesting

accommodation, constitute violations of the anti-discrimination provisions of Kentucky's Civil Rights Act, KRS 344 et seq.

52. As a direct and proximate result of RCP's conduct, as herein alleged, Plaintiff has suffered lost wages, emotional pain and other non-pecuniary losses, entitling Plaintiff to relief therefrom in the form of back pay, front pay and other terms, conditions, and privileges of employment, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, plus attorney's fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Christopher Ohlmann respectfully requests a trial by jury and judgment against the Defendant, Reynolds Consumer Products, LLC, for:

a. An award of damages in the amount of Plaintiff's lost wages, and employment benefits, together with pre-judgment interest thereon;

b. an additional amount as liquidated damages equal to the sum of the amount of Plaintiff's lost wages, and employment benefits, together with pre-judgment interest thereon under Counts I And II;

c. Reinstatement and promotion or an award of Front Pay;

d. an award of compensatory damages for Plaintiff's emotional distress under Count III of the Amended Complaint;

e. Reasonable attorney's fees;

f. Costs; and,

g. Any and all other relief to which the Plaintiff appears entitled.

Respectfully submitted,

**TILFORD DOBBINS & SCHMIDT, PLLC**

By: /s/ Ayala Golding
**AYALA GOLDING**
Tilford, Dobbins & Schmidt, PLLC
401 West Main Street, Suite 1400
Louisville, Kentucky 40202
Phone: (502) 584-1000
agolding@tilfordlaw.com
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing has been served upon the following, via e-mail, on this the 15th day of March, 2022:

C. Tyson Gorman
Jordan M. White
Marianna J. Michael
WYATT, TARRANT & COMBS, LLP
400 West Market Street, Suite 2000
Louisville, KY  40202
Tel.: 502.589.5235
Fax: 502.589.0309
E-mail: tgorman@wyattfirm.com
E-mail: jwhite@wyattfirm.com
E-mail: mjmichael@wyattfirm.com

*Counsel for Defendant Reynolds Consumer Products LLC*

/s/Ayala Golding
AYALA GOLDING